```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

ADRIENNE HAYES - JONES,

        Plaintiff,

vs.                              Case No. 2:05-cv-214-FtM-29SPC

METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant.
_____/

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. #30) filed on June 2, 2006. Plaintiff filed a Response on June 15, 2006. (Doc. #37.) Parties submitted deposition transcripts, affidavits, and other exhibits in support of their respective arguments.

Also before the Court is Defendant's Motion to Strike Plaintiff's Affidavit Filed in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. #44) filed on July 5, 2006. Plaintiff filed her Response on July 7, 2006. (Doc. #45.)

**I. Motion to Strike**

The Court first addresses defendant's Motion to Strike. Defendant Metropolitan Life Insurance Company seeks, pursuant to

Fed. R. Civ. P. 12(f), to strike plaintiff Adrienne Hayes-Jones's affidavit in its entirely.[1]

A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000)(citing Seibel v. Society Lease, Inc., 969 F. Supp. 713, 715 (M.D. Fla. 1997)).  As this Court has recognized, an affidavit "submitted in connection with a summary judgment motion is subject to a motion to strike if it does not measure up to the standard of Rule 56(e) of the Federal Rules of Civil Procedure."  Id. at 1030; Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 684-85 (M.D. Fla. 1999).  Rule 56(e) states that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to matters stated therein."

---

[1] The Court notes that Rule 12(f) is not the proper way to challenge an affidavit because Rule 12(f) is limited to striking pleadings. Ali v. City of Clearwater, 915 F. Supp. 1231, 1236 (M.D. Fla. 1996) (collecting cases).  Some courts have stated that the proper procedure would be to file an objection to the affidavit. Morgan v. Sears, Roebuck & Co., 700 F. Supp. 1574, 1576 (N.D. Ga. 1989).  In any event, this Court has recognized that summary judgment affidavits may be stricken if they do not comply with Fed. R. Civ. P. 56(e). Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000); Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 684-85 (M.D. Fla. 1999).  Thus, the Court will consider the merits of defendant's objections to the affidavit under this standard.

Defendant contends that (1) the affidavit contains contradictory statements to the affiant's prior deposition testimony, (2) the affidavit lacks supporting documents, (3) the statements in the affidavit are not based on the affiant's personal knowledge, and (4) the affidavit includes inadmissible hearsay and conclusory statements.  Having reviewed the parties arguments, the Court finds that defendant's Motion to Strike will be granted in part.  To the extent that the affidavit contains statements which are not based on plaintiff's personal knowledge, the Court will strike those assertions.  These statements are as follows:

1. "I was recruited with misleading information about the Naples Agency."  (Doc. #37-2, Exh. A ¶ 3.)

2. "Defendant wanted to assign me to the Harlem office." (Id. ¶ 4.)

3. "White and male managers at Defendant were allowed to run their offices using their own discretion.  I was Micro managed although by skill, knowledge and experience I was superior to most of them.  Defendant was run by personality and not by performance and identifiable standards.  This allowed for racial discrimination to be practiced against me and other blacks."  (Id. ¶ 14.)

4. "Rob Liberman, a white male with less experience than I had, was given the position."  (Id. ¶ 15.)

5. "If a person is not making money he or she is almost impossible to please Art Harduvel was only interested in the number

of employees and wanted me to keep non performers employed." (<u>Id.</u> ¶ 20.)

    6. ". . . things they would only say because I was female." (<u>Id.</u>)

    7. "They were men and Defendant considered there treatment of the employees they supervised as being tough, demanding, aggressive and hard working. When I used the same principles I was considered demanding, aggressive and an overpaid black woman with an attitude." (<u>Id.</u>)

    8. ". . . the agenda changed and they no longer needed me as window dressing." (<u>Id.</u> ¶ 21.)

    9. "Defendant's non-support also caused a lack of confidence in me by my subordinates and poor moral. They believed that the agency was not being supported because of me and to deny me was to deny them" (<u>Id.</u> ¶ 22.)

    10. "Art Harduvel's attitude was that I was making more than everyone else so why don't you just take the money and stop trying to change things, even if it was for the better." (<u>Id.</u>)

    11. "My firing was retaliation for contacting Human Resource, the EEOC and others for being discriminated against." (<u>Id.</u> ¶ 24.)

    12. "The managing director who replaced me received all of the things I requested from Defendant to grow the agency before I was terminated." (<u>Id.</u> ¶ 28.)

The Court finds that the other portions of the affidavit will not be stricken. The referenced documents have already been submitted

into the record. Any contradictory statements to plaintiff's deposition testimony will not alone be allowed to create a material factual dispute, but do not necessarily invalidate the affidavit. Thus, defendant's Motion to Strike (Doc. #44) will be granted in part as to the above mentioned statements, and the motion will otherwise be denied.

## II.  Motion for Summary Judgment

### A.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with

extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

**B.**

Viewed in the light most favorable to plaintiff, the summary judgment facts are as follows: The parties entered into an employment agreement in which defendant agreed to employ plaintiff as the Managing Director of defendant's Naples Agency for a period of three years under certain conditions. (Doc. #30, Exh. A.)  The agreement provided a formula for plaintiff's compensation based on the commission goals set forth in her business plan. (Id. at ML000030.)  Plaintiff's employment contract stated as follows:

> Your appointment is not a guarantee of permanent employment or of continued employment for any definite or indefinite period of time.  Your employment may be terminated by the Company[2] without advance notice for breach of any Company rule, policy, procedure, or the

---

[2] The term "Company" refers to defendant.

>     violation of any law and also may be terminated at any
>     time . . . .

(Id. at ML000032.)

Plaintiff began her employment as the managing director with defendant in December 2001. It is undisputed that during plaintiff's employment with defendant, she failed to meet any of the original goals set forth in her business plan. It is further undisputed that some of the employees of the Naples office submitted complaints about plaintiff's management to her supervisor prior to her discharge.

Plaintiff's predecessor, Ken Schena, was demoted to a Financial Service Representative (FSR) because he also failed to meet his production and salespower goals. Defendant has a policy under which defendant offers underperforming managing directors a demotion to the FSR position instead of discharging the underperforming employee.

In early 2003, plaintiff's supervisor, Art Harduvel, received complaints regarding plaintiff's management style from FSRs and other staff at the Naples Office. (Doc. #31-2 ¶ 15.) In March 2003, Mr. Harduvel directed defendant's Human Resources department to conduct a Work Environment Study at the Naples Office, and subsequently discussed the results with plaintiff. (Id.)

On April 21, 2004, Defendant terminated plaintiff's employment. Plaintiff filed a charge with the Equal Employment Opportunity Office on the same day. On May 11, 2006, plaintiff

filed a two-count Complaint alleging (1) Title VII claims based on discrimination and retaliation (Count I); and (2) a state claim for intentional infliction of emotional distress (Count II). Additional factual allegations are set forth below.

**C.**

**1. Plaintiff Establishes a *Prima Facie* Case**

    **a. Race and Gender Discrimination Claims**

Title VII was created to protect against discrimination on the basis of, among other classifications, race, gender or alienage. In employment discrimination cases, the plaintiff must show that defendant intentionally discriminated against her, a burden that remains at all times with plaintiff. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, (1981). Plaintiff must first present a *prima facie* case of discrimination by either: (1) showing direct proof of discrimination; (2) satisfying the scheme for circumstantial evidence of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or (3) by demonstrating, through statistics, a pattern of discrimination. Alphin v. Sears, Roebuck & Co., 940 F.2d 1497 (11th Cir. 1991). It is undisputed that no direct evidence of race or gender discrimination and no statistical evidence of a pattern of discrimination are present in this case.

The Court now considers whether circumstantial evidence exists. McDonnell Douglas, 411 U.S. 792.³ Under the McDonnell Douglas standard of proof, a plaintiff must first establish a *prima facie* case of intentional discrimination. Id. at 802. If plaintiff meets this burden, there is a presumption that intentional discrimination has occurred. Burdine, 450 U.S. at 254 n.7; Crawford v. Western Elec. Co., 745 F.2d 1373, 1376 (11th Cir. 1984).

Under the first step of the McDonnell Douglas test, plaintiff must establish the following elements of a disparate treatment claim: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) defendant employer treated similarly-situation employees outside of plaintiff's classification more favorably; and (4) plaintiff was qualified to do the job. See EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). It is clear that plaintiff meets the first and second elements. Defendant contends that plaintiff failed to satisfy the third and fourth elements.

With respect to the third element, defendant argues that plaintiff was treated more favorably than similarly situated

---

³In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established a framework for the allocation of the burden of production and an order for the presentation of proof in cases dealing with discriminatory treatment in employment. See Howard v. BP Oil Co., Inc., 32 F.3d 520 (11th Cir. 1994).

employees outside of plaintiff's classifications.  Defendant had a policy under which defendant offered an underperforming managing director to be demoted to a FSR position with a guaranteed weekly salary of $1,350.00 per week for up to thirteen (13) weeks, and a maximum compensation of $17,750.00.  While it is clear that plaintiff was not offered a demotion, defendant asserts that plaintiff was treated more favorably when she was given a severance package of $30,000.00 in lieu of the demotion option.

Plaintiff responds that defendant's deviation from the policy caused a negative and detrimental mark in her applications seeking employment with other companies.  Plaintiff asserts that she would have accepted the demotion, albeit a significant reduction in salary, to avoid a negative flag in her employment history.  In that sense, defendant did not treat plaintiff more favorably than other similarly situated individuals outside her classifications when defendant offered the severance package.[4]

Viewing the facts in the light most favorable to the non-movant, the Court finds that plaintiff satisfied the third element.

---

[4]Plaintiff also alleges that defendant discriminated against her by failing to provide support the Naples office when she was the managing director.  She further alleges that her successor receives support from defendant, and cites to defendant's current employee Brenda Bostic.  The Court, however, finds that Ms. Bostic's testimony does not support this assertion.  Ms. Bostic consistently testified that she did not know the Naples Office's current budget.  She further indicated that she did not know whether defendant or plaintiff's successor funded mass mailing postage and advertising.  Without further evidence, plaintiff cannot establish that defendant discriminated against her in this fashion.

The financial difference between the two options was not the only consideration. A reasonable jury could find that the negative mark in plaintiff's employment history constituted treatment of similarly situated individuals more favorably than plaintiff was treated.

With regard to the fourth element, defendant asserts that plaintiff did not qualify for the position, as evidenced by plaintiff's failure to achieve the commission and salespower goals in her business plan. The Court finds this argument without merit. The employment agreement places no such condition on plaintiff. Defendant provided no evidence indicating that plaintiff's education and prior work experience were insufficient to qualify her for the position of managing director. While plaintiff's subordinates filed complaints regarding her management style, plaintiff failed to meet the objectives in her business plan, these facts do not address plaintiff's qualification as a managing director. Plaintiff asserts that she has worked in the insurance sales industry since 1983, and was a managing partner at her previous employment with New York Life. The Eleventh Circuit recognizes that if a plaintiff has enjoyed a long tenure at a certain position, the courts may infer that she is qualified to hold that particular position. Clark v. Coats & Clark, 990 F.2d 1217, 1227 (11th Cir. 1993)(inferring a plaintiff's job qualifications from his 25 years of experience); see also Pace v. Southern Ry. Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)(finding

that "where a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy a *prima facie* case, can be inferred."). Thus, the Court finds that, at this stage, plaintiff has satisfied the fourth element, and has established a *prima facie* case of race and gender discrimination.

### b. Retaliation Claim

In addition to prohibiting discrimination, as discussed above, Title VII also prohibits retaliation. Specifically, Title VII provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, plaintiff must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some casual relation between the two events. Lipphardt v. Durango Steakhouse of Brandon, 267 F.3d 1183, 1186-87 (11th Cir. 2001); Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 507 (11th Cir. 2000). The Court finds that there neither direct evidence of retaliation nor evidence of a statistical pattern of retaliation is present. Since plaintiff presents only circumstantial evidence of retaliation, the

claim is analyzed under the framework from McDonnell Douglas. Rojas, 285 F.3d at 1342.

The third element of the *prima facie* case of retaliation is the only element in dispute. Defendant contends that there was no causal connection between plaintiff's complaint with the Equal Employment Opportunity Commission (EEOC) and her discharge. Defendant asserts that the decisionmaker was not aware of plaintiff's EEOC complaint until after plaintiff's employment was terminated. Defendant also argues that plaintiff's poor performance and complaints of her management style predated the protected conduct, and consequently, no causation can be established. Plaintiff responds that Mr. Harduvel, the decisionmaker, was aware of her complaints to the Human Resources department and to the Chairman and CEO.

The undisputed evidence shows that Mr. Harduvel did not become aware of plaintiff's EEOC charge until after she was terminated. The Court finds, however, that whether Mr. Harduvel had knowledge of plaintiff's complaints of discrimination to the Human Resources department and to defendant's Chairman and Chief Executive Officer (CEO) is a disputed issue of fact. Filing an EEOC complaint is not the only protected activity under Title VII. Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001)(finding that statutorily protected expression includes internal complaints to superiors as well as complaints lodged with the EEOC). There is evidence that Mr. Harduvel was aware of plaintiff's statements of

-13-

discrimination to the human resources department and he was copied on the letter stating the same allegations of discrimination to the Chairman and CEO. (Doc. #37-11.)

Defendant also argues that there is no causal connection between plaintiff's complaints of discrimination and her discharge because negative evaluations of plaintiff's performance predated her protected conduct. The Court disagrees.

The Eleventh Circuit holds that "[t]o establish the causal link requirement, the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Holifield, 115 F.3d at 1566; see also Laosebikan v. Coca-Cola Co., 167 Fed. Appx. 758, 764 (11th Cir. 2006). Plaintiff satisfies her burden if there is a close temporal relationship between the protected activity and the adverse employment action. Compare Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999)(citing O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1370 (7th Cir. 1993)(9-month gap between protected activity and adverse employment action precluded reasonable inference of causation)), with Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) (that plaintiff was discharged only one month after filing complaint with EEOC "belies any assertion by the defendant that the plaintiff failed to prove causation.").

On March 30, 2004, plaintiff sent a letter indicating that she was not given "considerations for more suitable opportunities because [plaintiff is] female and African American [. . . ]" to

-14-

defendant's chairman and chief executive officer and copied Mr. Harduvel. (Doc. #37-11 at 2.) Less than a month later, Mr. Harduvel terminated plaintiff's employment. There is no evidence that Mr. Harduvel did not receive this letter. Viewing the facts in the light most favorable to the non-movant, the Court finds that plaintiff satisfied the third element.

The Court finds that Pipkins v. City of Temple Terrace, Fla., 267 F.3d at 1197, is factually distinguishable from the facts here. The Pipkins plaintiff complained about poor performance evaluations as the adverse employment action, and consequently, the poor performance evaluations predating the Pipkins plaintiff's conduct negated the causal element. Here, plaintiff's discharge is the adverse employment action. The Court finds that her employment termination is not wholly unrelated to the plaintiff's complaints of discrimination to her superiors.

In sum, the Court concludes that plaintiff established a *prima facie* case of race and gender discrimination and of retaliation. The Court now turns to the next step of the analysis under Title VII.

### 2. **Defendant's Legitimate Non-Discriminatory Reasons**

Having satisfied all the elements for a *prima facie* case of discrimination, the burden shifts to defendant to proffer legitimate, nondiscriminatory reasons for its decision to terminate plaintiff's employment. Burdine, 450 U.S. at 253 (holding that the

presumption that intentional discrimination occurred raised by plaintiff's *prima facie* case may be rebutted by the employer's articulation of a legitimate, nondiscriminatory reason for its adverse employment action). If this is done, plaintiff retains the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001); Johnson, 234 F.3d at 507 n.6. Once defendant offers legitimate, nondiscriminatory reasons for the employment action, plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons, but were a pretext for discrimination. Reeves, 533 U.S. at 143; Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 658 (11th Cir. 1998).

Defendant proffers two legitimate nondiscriminatory reasons for plaintiff's discharge. First, plaintiff failed to meet any of the original performance goals in her business plan. Second, defendant received complaints of plaintiff's management style from the other employees in the Naples office. It is undisputed that defendant does not allow an underperforming managing director to retain his/her position. Defendant did not allow Ken Schena, plaintiff's predecessor, to retain the managing director position because he failed to meet his performance goals. Similarly, defendant did not allow plaintiff to retain her managing director

status because she failed to meet her performance goals. Mr. Harduvel also based his decision to terminate plaintiff's employment after receiving and conducting an investigation of the complaints regarding plaintiff's management style from her subordinates at the Naples office. Based on the uncontradicted evidence, the Court finds that defendant provided legitimate, nondiscriminatory and nonretaliatory reasons for plaintiff's discharge.

### 3. **Pretext**

Plaintiff now bears the burden of offering enough probative evidence so that a reasonable jury might conclude that defendant's reasons for termination were a pretext for the discrimination or retaliation. See Bogle, 162 F.3d at 658; Reeves, 533 U.S. at 143; Pennington, 261 F.3d at 1266. In the summary judgment context, a court must conduct this inquiry by determining whether a jury "could reasonably infer discrimination if the facts presented [by the plaintiff] remain unrebutted." Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). The court "must avoid weighing conflicting evidence or making credibility determinations. Rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn his favor." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). After reviewing the entire record, the Court finds that plaintiff

has made this requisite showing, and the evidence presented creates a jury issue.[5]

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Strike Plaintiff's Affidavit (Doc. #44) is **GRANTED IN PART AND DENIED IN PART**.

2. Defendant's Motion for Summary Judgment (Doc. #30) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of October, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

---

[5]Hairston v. Gainesville Sun Publ'g. Co., 9 F.3d 913, 920-21 (11th Cir. 1993)(finding that when determining whether plaintiff satisfied his/her burden under the pretext portion of the analysis, the Court may consider evidence already introduced to establish the *prima facie* case).